I'm certainly pleased to have you here today. For the benefit of those who have not argued here before, we have that lighting system, and you need to pay attention to that yellow light. Because when it comes on, you need to start bringing your argument to a close. You've got two minutes at that point. When the red light comes on, we ask that you conclude your argument at that point. As soon as you finish your silence, you haven't got to stop in the midst of silence. These arguments are being recorded for the purpose of assisting us in writing in the opinions that may come out of these proceedings. You need to stay right close to the podium while you're speaking. They're available to the public, and they're a matter of record, so you need to be careful what you say, I guess. Rebuttal is rebuttal only, and we don't expect you to bring up any new arguments in rebuttal that have not previously been addressed either by you or your opponent. With that, we'll call the first case of the day, the United States of America v. Anthony Navarro Spencer. Ms. Greenberg, representing the Public Defender's Office, will hear from you. In case you're representing a client instead of an office. Good morning, Your Honors. Counsel. May it please the Court, Laura Greenberg on behalf of Anthony Navarro Spencer. Mr. Spencer is a United States citizen who was arrested as he attempted to enter the United States using his brother's passport. He pleaded guilty to the federal offense of improper use of the passport of another and was sentenced to 30 months imprisonment to be followed by a three-year term of supervised release. On appeal, we challenged three special conditions of his release. Specifically, we argued that the district court plainly erred in imposing two occupational restrictions as conditions of his supervised release. And as to a third condition, one barring travel, we argued that the written judgment must be made to conform to the oral pronouncement of that condition, which allows for travel with prior permission from his probation officer. Our division is under plain error, right? Plain error of view? Yes, Your Honor. All right. Now, in plain error, there's first got to be an error made by the district court. Where is the established precedent upon which the district court plainly erred in not following it? We rely on the plain language of the policy statement that governs occupational restrictions as conditions of supervised release. Under that policy statement, which is in 5F1.5 of the guidelines, the district court may impose a condition that prohibits the defendant from engaging in a specified occupation, business, or profession, or limits the manner in which he may do so, but only if the court first finds that a reasonable relationship existed between the defendant's employment and the conduct relevant to the offense of conviction itself. All right, what do you do about the unpublished opinion in which we said that that related only to the immediate primary occupation of the defendant? I mean, that would have thrown the district court office to not be in a clearly established precedent if the circuit had said that in an unpublished opinion when it was interpreting the statute. I believe the court's referring to United States v. Emerson, the unpublished opinion. In that case, the court was addressing a condition that was a place restriction. The condition, I believe it prohibited the defendant from seeking employment or volunteering at any location or any activity where children congregate. And what the court in Emerson, as I read it, said was that Congress did not intend to transform all place or time restrictions into occupational restrictions simply because the defendant could show some kind of incidental or speculative effect on employment. So from your point of view, Emerson is fully consistent with the statute itself? I think Emerson was reading this court's published opinion in United States v. Paul, which was, again, addressing a condition that on its face was not an occupational restriction such as the one we have at issue in this case. Well, I mean, you can see where I'm driving, and that is that the error, the alleged error, was not plain at all because of the confusion, or at least, I guess it's just confusion, over the interpretation of the statute and our precedents. Again, I am relying on the plain language, and this court does review the district court's interpretation of a sentencing guideline de novo, even under plain error review, and sentencing guidelines are subject to the same rules of statutory construction that other statutes are subject to, where we look at the plain language, and if it's unambiguous, that is given the final reading that both begins and ends the inquiry. Under the plain language, a condition which prohibits the defendant from engaging in a specified occupation is an occupational restriction. It doesn't say a condition which prohibits the defendant from engaging in the defendant's specified occupation or the defendant's preexisting primary occupation. So, again, I think the only way to read the unpublished opinion in Emerson in harmony with the plain language of the governing policy statement is to limit its application to a condition which is not on its face an occupational restriction. It seems like you are conceding that Emerson is an incorrect gloss on the statute, but yet the district court, as a district court, would certainly have been influenced by Fifth Circuit opinion in determining whether there was error, irrespective of whether it was a published or unpublished opinion. How do you respond to that? The, again, I keep going back to the plain language. I guess I have another. I would like this to be limited to the plain language, but if the court were to look at the preexisting occupations, there is evidence in the record that Mr. Spencer was self-employed. He was employed as a marketing executive. Just based on the breadth of the conditions that we challenge, the first condition prohibits him. Let me interrupt you a minute in connection with your response and Judge Jolly's question. When we have this unpublished case that's not applicable, it's distinguishable, we don't have any cases, and so the plain language is not in conflict with any of our jurisprudence, published or unpublished. Isn't that the case? I think that's correct, Your Honor, absolutely. I think that this Court's opinion in Emerson, while it has some language that's supportive of the government's position, it read in context it is not in conflict with the plain language. Do you know why he didn't or his lawyer didn't object at sentencing to the occupational restrictions? No, Your Honor. I think it was a mistake of legal understanding of what was provided for under the guidelines. Does he have a job now? He's currently serving his term of imprisonment. I thought he was out. He's not out. No, I think he has another year left on his... He has a very demanding job now. Correct. I'm not sure how he's occupied in the prison, but he will have to get a job when he gets out of the prison. He's under a condition requiring him to seek employment. He'll be 54 years of age when he is released. He will, again, need to seek employment, and because of the breadth of the condition, which the Court has before the Court the condition, but it is very broad. It prohibits him from being employed in a number of specified occupations, real estate agent, sales representative, real estate broker, property manager, at any financial institution or any employment that otherwise involves monetary transactions. Well, other people's money, that's the problem. He has a little history of having a problem with other people's money. That's correct. What about the travel restriction? Is that... The travel... Do you all sort of resolve that? The travel condition that we complain of is a conflict. I know it is, but I thought, well, I can ask the government. I thought there had been some concession on that. I believe where we've joined issue on this is whether there's an ambiguity that can be resolved by resort to the record. And so, in a way, I believe that could be a concession. In sentencing, the district court ordered that he not travel anywhere without prior permission from probation, which is a standard condition. As it appeared in the written judgment, it says he is not allowed to travel during his term of supervised release. If that was error, may this court modify it, or do we need to remand it to the district judge to modify it? It seems like the record's clear as to what was said and what was written. I think it needs to be modified in the judgment itself just to conform with the condition that allows for travel with permission, so there's no mistake about that. And I believe that would be a remand for that purpose to reform. Again, to go back, unless there's other questions about the travel prohibition, the occupational restrictions that we complain about are blanket prohibitions. In fact, he can't work in the prohibited areas even with permission from his probation officer, and he is subject to other conditions that would protect the public from any risk that might flow from his criminal history, which I believe is what the district court was concerned with in imposing these conditions. He's under a third-party risk notification condition. He must inform his probation officer of any change in his employment prior to a change in his employment, and then the probation officer can notify any employer of his criminal history and is, I believe, obligated to do so. He can open no lines of credit. In other words, there are restrictions he's under that are designed to protect the public and to deter him from criminal conduct while allowing him to be developing an occupation, which is something that at 54 years of age he's going to need to be developing if he ever has a hope to be gainfully employed. And we believe it affects his substantial rights to be under such burdensome employment restrictions that will at the same time he's required to seek employment, it's narrowing the universe of employment where he could possibly be occupied to the point where it's putting him in a position where he will be unemployed during his period of supervision. Again, under the plain language, we believe that these are clearly occupational restrictions because they do prohibit him from engaging in specified occupations, and they are occupations of the sort, as this poll required, that would be a person's primary means of supporting oneself, not a hobby or an endeavor in which one might just earn some extra money. And they are the types of occupations that Mr. Spencer has been involved in in the past and will likely be involved in in the future. So it's not only in his interest but society's interest for him to be seeking employment without this limitation while he's under supervision and under the third-party risk notification. Under the sentencing guidelines, again, the plain language, is there any nexus between any of this employment things and using somebody else's passport, which is the crime of conviction? No, Your Honor, and his crime of conviction, there is a required nexus for the occupational restriction. His passport offense did not involve employment. He didn't obtain it through his employment or use it in his employment. He's prohibited from going to Mexico or Canada, as I recall. That's correct. That takes care of the passport. Correct, Your Honor. And the government hasn't argued, at least my understanding, that there is a link between his passport offense and the restrictions that we challenge. Their position is that these are not occupational restrictions, and I think that's incorrect under the unambiguous plain language of 5F1.5. Well, using someone's passport is identity fraud. Didn't he have a history of having some identity fraud convictions? Yes, Your Honor. So there's a nexus. There's not. He didn't use the passport. There's no question that he used the passport, his brother's passport, to try to gain entry into the country. Which was reported stolen. Did he steal it? I don't know, Your Honor. It was reported lost or stolen and that. But he didn't use the passport to access anybody's financial assets or in any way involving monetary. Correct. I agree. We ask that the district court exercise discretion to correct the error that it will unduly hamper him in his reintegration into society, which is the purpose of supervised release, to be under these restrictions. Okay. Thank you, Ms. Greenberg. You've saved some time for rebuttal. Correct. Freel, for the United States. May it please the court. My name is Jennifer Freel and I represent the United States. The question here with regard to error and whether these restrictions on occupation, whether those amounted to error, I do think turn on the cases we've already been discussing. United States versus Paul as well as United States versus Emerson. Now in Paul, which is a published case, the court did say that the restriction was for primary occupations. The facts of that case were that Paul was convicted of possessing child pornography. A condition prevented him from possessing photographic equipment. Even though his conviction did not relate to the production of child pornography, the special condition said he couldn't have photographic equipment. Well, the facts showed that he liked to take broken cameras, fix them, and sell them and made money doing that. Made about $200 a month is what it says in the opinion. The court said the special condition is fine. Under the guideline at issue 5F1.5, this is not his primary occupation. He can't have photographic equipment. Emerson took that language in a case that is more similar to the facts at hand. Emerson was convicted of a firearms offense, possessing a firearm while under a protective order. But in his criminal history, he had a conviction for sexual assault of an 8-year-old, his 8-year-old stepdaughter. The district court, as a result of the criminal history, imposed a condition that prohibited him from going to places that were frequented by minors. That condition had nothing to do with the firearms possession. Emerson was a physician. He hadn't been practicing as a doctor for a few years before his condition. He said this prohibition on going to places where minors go, that's going to prevent me from working. But the court said no. It does not apply. It is not your primary occupation under Paul. It used the direct language from Paul saying that a specific occupation as used in that section is one that is the defendant's primary means of supporting himself, not any endeavor from which the defendant has merely earned some money. In the instant case, under this precedent, the special conditions at issue do not relate to his primary occupation. The record shows that. What is his primary occupation? That is a good question. It appears to be fraud. But before being arrested on this offense, he had absconded to Mexico, where it appears he didn't do anything for nine months. He says that he had been unemployed and living off of unemployment benefits. There is a note mentioned in the PSR that he had been a, quote, unquote, marketing executive at Clear Channel, but that that had been unverified. Which, just using reasonable inferences, a company like Clear Channel, if someone works there for two years, I think they would have a record of it. But nonetheless, even assuming that's true, that he was a marketing executive, I don't think a marketing executive actually falls under these conditions. Certainly it's not self-employment. And second, a marketing executive is not going to have a situation directly with members of the public taking their money or their private documents. It would be more like something of trying to get the public to listen to a country western radio station. Help me with my memory. Did the PSR have any recommendations to the court that there be employment restrictions in the sentence? Yes, Your Honor. These exact restrictions were listed in the PSR. Which leads to, Judge Clement, you had asked whether there was an objection. There was an objection during the sentencing hearing. There also was an objection to the PSR. So these weren't a surprise. The attorney had lots of notice about these conditions. And looking at the conditions themselves, I also think we need to take a step back. You know, even if these conditions didn't exist, a bank is not going to hire someone with this criminal history. A real estate brokerage firm is not going to hire someone with this criminal history. An accounting firm is not going to hire someone with this history. Why put the restrictions in there? To protect the public. Well, if they're not going to hire him, why does the public need protection? Well, the issue on self-employment, I think, is the key, really. The key is that self-employment because that's what he had done as a fraudster. He opened up this company called Global Surplus Services, his own company, while on parole. He opened it under his wife's name. And he targeted people facing foreclosure and acted as a quote-unquote agent. But then when the surplus on the foreclosed property came through, he kept the money. So the self-employment is the key to protecting the public. And these other restrictions, I think, in actuality, especially when looking at substantial rights, he's not going to be able to get these kind of jobs. But looking at substantial rights while we're on that topic, there are lots of types of employment that aren't affected here. He could drive a truck. He could work in food services. He could work in landscaping. There are a wealth of opportunities for this gentleman to make money, especially considering that these conditions are only for his three years of supervised release. And moreover, the PSR does state that as soon as he can, Mr. Spencer is moving to Costa Rica. So I guess it will be the Costa Ricans who will be facing this con man. But because of Anderson. Does he still have a passport? Well, it will be interesting to see after three years. He'll be out of the control of the court. And he is a U.S. citizen. But to get to whether or not there was error, I think under Anderson and Emerson, there was not error. And I think that it's important that the district court have at its fingertips these types of special condition tools, especially due to actions by our own Justice Department and Congress. Sentences are going down. And it seems to me that as sentences of incarceration go down, the court's ability to really make the supervised release period work and to really make sure we are protecting the public and deterring crime, I think it's important that courts have these types of conditions. And moreover, I think it's interesting that the public defender's office tries to distinguish Paul and Emerson by saying, well, those weren't written in the language of occupation. It said, you know, he couldn't own photographic equipment. But I propose to the court that if the conditions here were written in a way that said Spencer is prohibited from handling other people's money or Spencer is prohibited from accessing other people's driver's licenses or passports, I think we might be here again because clearly it should be the overall picture of the condition. And I don't think that's a good distinction to make. I think when it is not someone's primary occupation under Paul and under Emerson, the special conditions are valid. And at a minimum, any error would not be plain. I have talked a bit about the substantial rights. I think the point there is that. What about any argument that you might make with respect to its relationship to the crime of conviction? You know, in the briefing we do not make that link. But I think it clearly was in the district court's mind when you look at this list of occupations, a real estate broker, a loan officer, a financial consultant, especially real estate. I mean, you have to show your driver's license. You have to show who you are. And Spencer's criminal history shows lots of identity theft. He tried to open a bank account with his infant son's Social Security number. I mean, this is not the person. He used his brother's passport. This is not a person who takes the identity of others. He wasn't using the passport for identity theft. He was using it to get in the country, nothing to do with occupation. But the record does show that he was on parole and had violated his parole. So in addition to just getting into the country, he was a citizen. If he had used his own documents, probably would have triggered a warrant. So I do think it wasn't as innocuous as it might seem. Parole is not an occupation, I don't believe. No, Your Honor, of course. But he also, his criminal history shows at one point he got a $700,000 mortgage in someone else's name. But, again, it's not necessarily in the briefing. I don't think our argument rests on that. But when you look at those conditions, especially those conditions that are really enumerated, I think the district court had in mind this guy should not have in his possession personal identification documents. He just can't be trusted. The public has been harmed by this man's con for more than 20 years. And he had 17 criminal history points. I guess I'm now sort of moving into the fourth prong of plain error here. The counsel here talked about society's interests. I think society's interests are served by keeping this guy away from other people's money. And, you know, one of the saddest things I read in the PSR was a gentleman who knew that Spencer was a fraud. Spencer approached him and said, hey, let me help you get your surplus check from the bank. And the guy said, no, I don't want you anywhere near me. You seem like a con. Well, Spencer forged a power of attorney and got the surplus check. I mean, these are people facing foreclosure. These are people getting kicked out of their homes. And he just kicks them while they're down. And another case, he sold a piece of real estate fictitiously. Sell is not really the right word. There was a Christmas tree farm in California, and he told a buyer that he was selling it. He forged the real estate documents. Turns out the actual owner of the tree farm had no idea this was happening. Took more than $400,000. Well, if he were convicted of a crime of conviction here had anything to do with business or fraud or identity theft, I'd see the nexus. But you keep avoiding the fact that his only crime of conviction was using the stolen passport. Had nothing to do with business. Your Honor, I agree with that. This discussion is more about the fourth prong of plain error review. With regard to whether or not there was a nexus, I think we're hard pressed to say there was. But it's like Emerson. What's the nexus between possessing a firearm and not going around areas frequented by children? And that was upheld. And when it's not the primary occupation, I think it was fair for the district court to rely on that and say it's not his primary occupation. Under the 18 U.S.C. 3583D factors, when you get out of the sentencing guideline 5F1.5, you're into the section 3583. And the court's looking at protecting the public. The court's looking at history and characteristics of the defendant. The court's looking at deterring future criminal conduct. And these conditions fit so squarely within that section of the statute. But when we're looking at plain error review, even if there were error, and I don't think there was under Paul and Emerson, it certainly wasn't plain. Didn't affect his substantial rights. And the fourth prong, I think, is really our strong. It's just given the havoc this man wreaked in California. I would like to touch briefly on the travel restriction. It's under a different standard. We're looking at abuse of discretion because you couldn't see the conflict until the written judgment came out, obviously. And when I look at those three, there are really three statements at issue. They're what the court said during the sentencing. There was the written special condition and then the written standard condition. And when I look at all those together, I see more of an ambiguity than a conflict. The court did say at the sentencing that Spencer would be prohibited from traveling or residing in Mexico and Canada. And then he adds on, for that matter, you are not going to be allowed to travel anywhere in the world without the specific permission of your probation officer. Lo and behold, the written special condition doesn't have that final clause. It just says the defendant shall not be allowed to travel during the term of supervised release. So I think, if anything, we're conceding is that, yes, they're different. We don't have that final clause. But what I think transforms all this into more of an ambiguity in the conflict is the written standard condition, that the defendant shall not leave the judicial district without permission of the court or probation officer. That's routine in every law. Standard condition, yes. So he's not going to be able to go anywhere without permission. I think that sort of clears up what's going on. I did think, in the reply brief, it was interesting that the argument was made, well, he might not know whether or not he can travel within the jurisdictional district. Like, he could read these to somehow make him think he can travel from Austin to San Antonio, for example, within the jurisdiction. But I think, you know, if the court finds that appealing, you know, we would leave it to your discretion. But I think the parties that need to know, Spencer, the probation officer, and the court, certainly will be able to work within this framework. And, again, with regard to other conditions, I think the point should be made that, when looking at substantial rights and looking at the fourth prong, this isn't a prison term where it's said and done. This is supervised release, where if Spencer gets a job opportunity of a lifetime that he's worried doesn't fit within the special conditions, he can go to the court and seek a modification. He can talk to his probation officer and say, listen, I'm going to open a food truck. I've got the best recipe for donuts around. Is that okay? And the probation officer from the court can say, you know, yes, it's self-employment, but it's removed from our concerns. Or there is an opportunity and a mechanism for him to go back and seek modifications as necessary, were he to have a job opportunity that is somewhat within a gray area. So with that, I'll give my remaining time to the court. Okay. Thank you very much, Ms. Friel. Ms. Greenberg, you have some time for a little. Thank you, Your Honor. I just have a couple of quick points. We are on plain error review, so I think it's important to correct something that was inaccurate in the government's brief that counsel referred to in her argument. And it's a quotation that's attributed to this court's published opinion in Paul. I think it's on page 8 of the government's brief. And in that quotation it says, specified occupation for purposes of 5F1.5 means a defendant's preexisting primary means of supporting himself. That quotation does not actually appear anywhere in Paul. I think it was a drafting error. That quotation is in Emerson, the unpublished opinion. So I wanted to correct that because, again, Paul, I think what the court was articulating in Paul was the definition of the term occupation. That an occupation is one's primary means of supporting oneself as opposed to a hobby or an endeavor by which one might earn some money. And that was what was at issue in the defendant's interest in photography and camera repair. The only argument that the defendant in that case made was that this condition would interfere with his interest in these activities. So the court was both articulating a definition of the term occupation and responding to the argument advanced by the defendant in that case. Again, I think the plain language of the policy statement and the court's explication of the term occupation leads us to the conclusion that there was error in this case based on the breadth of the condition at issue in this case, the fact that it prohibited him from engaging in specified occupations. I wanted to address something again. I think it is in society's interest. As I understand the district court's concern with Mr. Spencer's criminal history, occupational restrictions cannot be based on a defendant's criminal history alone. He did serve seven years in state prison for those fraud offenses that were at issue in the conduct that government counsel alluded to. It's been a decade since he committed that offense. He did commit the instant passport offense. That's why he's in federal prison. But there's been no evidence of the kind of conduct at issue in those prior offenses. Again, we ask that the court exercise discretion to allow him to be developing an occupation during a period of time in which he will be under the supervision of his probation officer. If the court has no further questions, I'll cede the rest of my time. Thank you, Ms. Greenberg. Thank you.